IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY W. IVY,                                3:12-cv-01351-MA

              Plaintiff,                OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

LISA R. J. PORTER
KP Law LLC
16200 S.W. Pacific Highway, Suite H-280
Portland, Oregon 97224

      Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

RICHARD RODRIGUEZ
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-7075

      Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Timothy W. Ivy, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed his applications for SSI and DIB on February 24, 2009, alleging disability due to a "[r]ight knee condition and lower back." Tr. 172. His applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on June 2, 2011, at which plaintiff was represented by counsel and testified. In addition, Dorothy Nadine Tunget, plaintiff's wife, testified at the hearing. Vocational Expert (VE) C. Kay Wise was also present throughout the hearing and testified.

On July 8, 2011, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

## FACTUAL BACKGROUND

Born on February 23, 1982, plaintiff was 26 years old on the alleged onset date of disability, and 29 years old on the date of the hearing.  Tr. 167.  Plaintiff has a high school education and past relevant work as a Service Attendant, Tire Technician, Glass Stacker, and Taxi Driver.  Tr. 36-37, 177.

Plaintiff alleges his conditions became disabling on August 15, 2008.  In addition to his hearing testimony, plaintiff submitted an Adult Function Report and a series of forms supplied by his attorney.  Tr. 180-87, 216-75.  Plaintiff's wife, Dorothy Tunget, testified at the hearing and submitted a Witness Statement. Tr. 309-16.  In addition, Leona Sisson and Dwight D. Crow submitted Witness Statements on plaintiff's behalf.  Tr. 298-305, 306-08.

As relevant to this case, Jill E. Spendal, Psy.D., examined plaintiff and submitted a Learning Disorder and Psychological Assessment.  Tr. 451-69.  Maria Armstrong-Murphy, M.D., examined plaintiff and submitted a Comprehensive Musculoskeletal Evaluation. Tr. 471-80.  Robert A. Kruger, Psy.D., also examined plaintiff and submitted an evaluative opinion.  Tr. 484-94.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Each step is

potentially dispositive.  The claimant bears the burden of proof at Steps One through Four.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.  See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, August 15, 2008.  See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 24.

At Step Two, the ALJ determined that plaintiff's "bipolar disorder; personality disorder; generalized anxiety disorder/panic disorder; borderline intellectual functioning; alcohol dependence in remission; obesity and status post right knee surgery" are severe impairments.  See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 24-25.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 25-27.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform light work; can frequently lift 20 pounds, and occasionally lift 10 pounds; stand and walk approximately six hours in an eight hour workday; sit for

approximately six hours in an eight hour workday; and frequently stoop, but only occasionally climb, balance, kneel, crouch, and crawl.    Tr. 27.    The ALJ additionally limited plaintiff to unskilled work, defined as routine, repetitive tasks with simple instructions; and further limited plaintiff to only occasional, brief contact with the general public and coworkers, and no teamwork.    Id.    Finally, the ALJ limited plaintiff to work that requires no more than simple arithmetic or reading.    Tr. 27-36.

At Step Four, the ALJ found that plaintiff is unable to perform any past relevant work.    See 20 C.F.R. §§ 404.1565, 416.965; Tr. 36-37.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Cardboard Inserter, Inspector of Small Products, and Bench Worker.    See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a); Tr. 37-38.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff makes three primary arguments on appeal.    First, plaintiff argues that the ALJ erroneously discredited plaintiff's testimony by failing to cite clear and convincing reasons to discredit his testimony, and improperly citing plaintiff's activities of daily living and ability to work while taking

medications.  Second, plaintiff asserts the ALJ improperly weighed the medical testimony by rejecting the opinions of Drs. Spendal and Suckow.   Third, plaintiff maintains that the ALJ erroneously discredited the lay opinions of Ms. Sisson, Mr. Crow, and Ms. Tunget.   Accordingly, plaintiff concludes that the vocational hypothetical was inadequate because it did not include the limitations contained in the rejected testimony.

### STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.    Plaintiff'S Testimony

Plaintiff argues the ALJ erred in rejecting his subjective symptom testimony.  As part of this argument, plaintiff asserts the ALJ improperly found that plaintiff could return to work when compliant with prescribed treatment and that plaintiff's activities of daily living were evidence of ability to perform full-time work.

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.   20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear, and convincing reasons for doing so.  Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive."  Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).   In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the]

claimant's testimony." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002).    The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, plaintiff testified that he earned his high school diploma, but was in special education throughout his schooling. Tr. 51. As to his reasoning for quitting his last job, plaintiff stated he quit because he "couldn't deal with the people anymore." Tr. 53. At that time, plaintiff stated that he was "extremely irritable, edgy," and " very argumentative." Tr. 61. Plaintiff stated that his biggest limitations are that he does not "work very well in social environments," and struggles with concentration, memory, and following directions. Tr. 55. Plaintiff reported that he was not taking medication or seeing a mental health professional at the time of the hearing because he "lack[ed] the drive to do it." <u>Id.</u>

When taking his medication, plaintiff reported his moods are more stable, although toward the end of his medication regimen he testified that he was having difficulty "motivating." Tr. 58. Plaintiff stated that he struggles to comprehend the newspaper, and does not read much because he has trouble understanding what he reads. Tr. 62-63. Plaintiff stated that although he is often depressed, he goes through manic periods during which he is extremely active and irritable. Tr. 66-67.

In his Adult Function Report, plaintiff reported that in a typical day he will "get up, drive to a [Laundromat] go to the bathroom find a place to sit in the car [where] I won't be bothered by anyone." Tr. 180.    Before plaintiff's conditions set in, plaintiff reported that he could "stand and walk and lift heavy items," but no longer can. Tr. 181.    Plaintiff reported that pain and panic attacks sometimes disrupt his sleep, and that he cannot dress or bathe himself because of pain.    Id.    Plaintiff checked that his conditions affect his abilities to lift, squat, bend, stand, reach, walk, kneel, talk, hear, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and get along with others.    Tr. 185.    Plaintiff reported that he can walk one-half of a mile before needing to rest for "3 hours if I am lucky."    Id.    Plaintiff additionally stated that he can only pay attention for 5 minutes, does not follow spoken instructions well, has trouble getting along with authority figures, and handles stress poorly.    Tr. 185-86.

The ALJ rejected plaintiff's testimony because several of plaintiff's allegations were inconsistent with other statements and evidence in the record, inconsistent with his wife's testimony, and because plaintiff demonstrated secondary gain motives in seeking medical treatment for the purpose of establishing documentation for his disability application.    I conclude that the ALJ's reasons for rejecting plaintiff's testimony are clear and convincing.

The ALJ was correct that plaintiff made inconsistent statements throughout the record. As the ALJ noted, plaintiff alleged in his Adult Function Report that he was unable to dress himself, but later indicated that he only had some difficulty dressing himself, and again that he only sometimes had difficulty putting on a shirt or pants and that putting on shoes and socks took additional time. Compare Tr. 181 with Tr. 221, 235. Similarly, as the ALJ also noted, plaintiff alleged that he suffered from paranoia on some forms, but denied paranoia elsewhere. Compare Tr. 185, 225, 227, 425 with Tr. 379, 511. In addition, as the ALJ noted, plaintiff made several inconsistent statements about why he left his prior job; ranging from because he could not "deal with the people anymore," to the physical ailments in his right knee and lower back, to because he was "planning to move away, and [] wasn't physically able to keep up with the job because of [] knee problems." See Tr. 53, 172, 487. As to his educational history, plaintiff testified that he was in special education classes throughout his schooling, but had earlier told Dr. Spendal that he did "not [receive] much in the way of support services" in school, and "recalled predominantly being in mainstream classes," and reported to Dr. Kruger that while he was "'supposed to get special education classes'" in school, he "described himself as being involved in the regular classroom setting." ' Tr. 51, 452, 487.

The ALJ also noted inconsistent statements in plaintiff's presentation to mental health professionals. For instance, on February 17, 2009, plaintiff presented to Marvin Roman, M.D., for "possible depression symptoms," but noted that his only symptoms were outbursts of irritability and anger, but otherwise he had good energy, sleep, and appetite. Tr. 381. Dr. Roman concluded that "[o]n initial exam I don't think this patient has depression," and opined that plaintiff likely has "anger issues." Id. Less than a month later, however, plaintiff presented to establish care with Claudia Rodriguez, QMHP, reporting a ten-year history of panic attacks, "excessive worry," "autonomic hyperactivity resulting from anxiety" that affects his daily functioning, interrupted and insufficient sleep, and poor appetite and energy. Tr. 441. It is also notable that these presentations took place within a short period after plaintiff applied for disability. The ALJ reasonably cited plaintiff's inconsistent statements as a reason to reject his testimony.

The ALJ's finding that plaintiff demonstrated secondary gain motives in seeking medical treatment for the purpose of obtaining evidence for his disability application is also amply supported in the record. On June 18, 2009, plaintiff told Dr. Suckow that one of his reasons for coming to the psychiatric evaluation was that he "applied for disability and was denied; [plaintiff] is working on obtaining an attorney and states he was told by one lawyer he

talked to that he 'needed to get a doctor.'" Tr. 427.   On August
17, 2009, Dr. Roman noted that plaintiff's knee showed only normal
post-surgical changes, but that plaintiff made weekly doctor visits
because "he needs a form signed to certify that he's seeing any
doctor regularly." Tr. 374.

On September 14, 2009, plaintiff agreed to have his
psychiatric medication management turned over to his primary care
provider, but Dr. Suckow noted that plaintiff "might have [second]
thoughts from the standpoint that he is apparently actively
applying for disability and has been encouraged to see a
psychiatrist, apparently by his attorney." Tr. 409. The next day,
plaintiff asked Rachel Schooler, QMHA, to "meet weekly to fulfill
DHS requirements so he won't have to look for a job," despite there
being "no clinical reason for us to meet weekly." Tr. 408.   On
December 14, 2009, after Dr. Suckow recommended turning over his
psychiatric care to his primary care provider, plaintiff's "one
concern was [the] impact on [his] disability application." Tr.
406.   Moreover, I note that despite the longstanding nature of
plaintiff's allegations, there is very little evidence of plaintiff
seeking medical or mental health treatment before he applied for
disability benefits in February of 2009. The ALJ's rejection of
plaintiff's allegations because he demonstrated secondary gain
motives in seeking medical treatment is amply supported by the

record and constitutes a compelling reason to reject plaintiff's testimony.

Finally, the ALJ rejected plaintiff's testimony because it was inconsistent with his wife's testimony at the hearing. Indeed, plaintiff's allegations of severe limitations are belied by Ms. Tunget's testimony that plaintiff could work on cars for eight hours per day, forty hours per week, as long as he does not have to work with other people. Tr. 74.

Plaintiff's argument that the ALJ improperly cited plaintiff's activities of daily living and stability on his medication regiment to reject his testimony is unavailing.[1] An ALJ may cite noncompliance with prescribed medical treatment, or failure to seek medical treatment, to discredit a plaintiff's allegations of disabling limitations. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). As the ALJ cited, plaintiff discontinued his own medication regimen on more than one occasion and had significant gaps of time in the medical record where he did not seek treatment. See Tr. 502, 505. Moreover, the ALJ was correct that plaintiff admitted being more stable when compliant with his medication regimen. Tr. 406, 492 ("It is also important to note that [plaintiff] reported that, mentally, he does much better when he is compliant with his

_____

[1] To the extent plaintiff argues that the ALJ referenced these reasons as an independent basis to reject his disability claim, rather than as part of the rationale for the credibility determination, plaintiff is mistaken. Both citations were made in the course of the credibility analysis. Tr. 29-30, 33.

medication regimen."). These citations by the ALJ were relevant to discrediting plaintiff's testimony. Additionally, the ALJ permissibly cited inconsistency between plaintiff's activities of daily living and alleged limitations to reject his testimony. Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Nonetheless, even if these reasons were not valid reasons to reject plaintiff's testimony, such error would have been harmless because the other reasons discussed above constitute clear and convincing reasons for rejecting plaintiff's testimony. In sum, I conclude that based on the above cited reasons, the ALJ properly discredited plaintiff's testimony.

## II.   Consideration of Medical Testimony

Plaintiff next argues that the ALJ erroneously weighed the medical opinions of Drs. Spendal and Suckow. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id.

"'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray

v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).
"'Where . . . the record contains conflicting medical evidence, the
ALJ is charged with determining credibility and resolving the
conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040
(9th Cir. 2003)).    The ALJ is responsible for translating the
claimant's medical conditions into functional limitations in the
RFC.   See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir.
2008). Ultimately, the RFC is sufficient if it is "consistent with
restrictions identified in the medical testimony."   Id.

## A.   Dr. Spendal

On December 16, 2009, plaintiff was referred to Dr. Spendal
for a Learning Disorder and Psychological Assessment by the
Department of Human Services.    After extensively reviewing
plaintiff's history and conducting a thorough exam, Dr. Spendal
diagnosed plaintiff with "Bipolar I Disorder, Generalized Anxiety
Disorder, and Panic Disorder without Agoraphobia," as well as a
Personality Disorder, not otherwise specified.    Tr. 465.    In
addition, Dr. Spendal noted "some extreme deficits in cognitive
functioning." Id. Accordingly, Dr. Spendal noted that plaintiff
will "struggle with comprehension and reasoning tasks," will be
"slower to process information than the majority of his peers," and
will "need to be spoken to in clear and concise language and
repetition will be important." Tr. 466.  Dr. Spendal also noted
that plaintiff has "notable deficits in visual attention and

therefore visual memory," and that "[h]is auditory memory is also extremely poor."  Id.  As such, Dr. Spendal concluded that plaintiff "is not considered a competitive candidate for employment," and that his "social difficulties and anxieties as well as his mood lability would stop him from being a consistent employee." Tr. 467-68.  Notably, however, in the course of the examination, Dr. Spendal noted that plaintiff "may not have answered in a completely forthright manner," and that the interpretive hypotheses presented in this report may overrepresent the extent and degree of significant test findings in certain areas." Tr. 461-62.

    The ALJ rejected Dr. Spendal's opinion because it was based, at least in part, on plaintiff's unreliable self-report. Tr. 33-35.  Because Dr. Spendal's assessment was contradicted by that of Dr. Kruger, the ALJ was required to cite specific, legitimate reasons to reject her opinion.  I conclude the ALJ did so.

    As discussed above, the ALJ appropriately rejected plaintiff's testimony on account of a number of inconsistencies in the record. Some of those inconsistencies related directly to reports made to Dr. Spendal, such as plaintiff's inconsistent reports about his educational history.  Tr. 452.  Moreover, the ALJ noted that questions were raised about the veracity of plaintiff's responses and the genuineness of his effort in testing in the exams of both Drs. Spendal and Kruger.  Tr. 456-57, 461-62, 489-92.  The ALJ's

16 - OPINION AND ORDER

notations in this respect are particularly relevant to weighing Dr. Spendal's report because it is clear that much of Dr. Spendal's testing relied on the veracity of plaintiff's reporting and full participation in testing, as Dr. Spendal noted that due to potential poor effort on testing "it is possible that the clinical scales may over-represent or exaggerate the actual degree of psychopathology." Tr. 462.    Nonetheless, Dr. Spendal did not account for these uncertainties in her conclusions and recommendations.    The ALJ reasonably discredited Dr. Spendal's report because it was based on plaintiff's unreliable self-reporting and participation in examination.    This is a specific and legitimate reason, supported by substantial evidence to reject Dr. Spendal's report.[2]

///

---

[2] The parties expend considerable effort discussing whether it was proper for Dr. Kruger to perform testing designed to measure the validity of plaintiff's alleged symptoms.    Plaintiff argues incorrectly that the ALJ could not consider such information in weighing the medical testimony.    I note that both Drs. Kruger and Spendal included some testing related to symptom validity in their examinations.    While it is true that the SSA Program Operations Manual System generally instructs ALJs not to purchase symptom validity tests (SVT), there is nothing in the record demonstrating that the ALJ affirmatively purchased SVT in this case, as opposed to SVT merely being a part of the comprehensive testing performed by Drs. Kruger and Spendal.    See SSA POMS DI 22510.006, available at 2001 WL 1933148.    More to the point, however, the POMS makes clear that "[w]hen the results of SVT are part of the medical evidence of record, we consider them along with all of the relevant evidence in the case record." Thus, the ALJ did not err in considering the symptom validity testing present in the examinations of Drs. Spendal and Kruger.

**B.    Dr. Suckow**

Plaintiff appears to next argue that the ALJ erred in rejecting the opinion of Dr. Suckow, plaintiff's treating physician. Although it is not entirely clear from plaintiff's briefing, it appears the opinion plaintiff refers to is a chart note from Dr. Suckow dated December 14, 2009, in which Dr. Suckow opined "in my professional opinion, given his [history] and his MSE even with good symptom control, patient would likely not be able to maintain employment and [would] be at fairly high risk for a relapse of his symptoms secondary to his chronic mental illness." Tr. 406; see also Tr. 428 (expressing a very similar opinion).

The ALJ rejected Dr. Suckow's opinion because it was a conclusory statement that does not provide specific limitations, and because - in the same chart note - Dr. Suckow discharged plaintiff to his primary care provider for medication management, suggesting Dr. Suckow believed plaintiff was more stable than his opinion otherwise suggests. Tr. 35. As an initial matter, I question whether Dr. Suckow's chart note is medical testimony, or rather just one piece of medical evidence that the ALJ must consider in the medical record. Even if Dr. Suckow's opinion is medical testimony that the ALJ could only reject by providing specific and legitimate reasons, I find the ALJ met this standard.

The ALJ was correct that Dr. Suckow's opinion was conclusory, and failed to provide specific limitations. Dr. Suckow provided

little more in his opinion than the conclusion that he does not believe plaintiff can work because of his mental health conditions. This is precisely the type of conclusory opinion the ALJ need not accept. See Chaudhry, 688 F.3d at 671. Moreover, the ALJ reasonably found that Dr. Suckow's discharge of plaintiff's psychological care to his primary care physician indicated that plaintiff's mental impairments were not so severe as to be disabling. The ALJ properly considered Dr. Suckow's chart note.[3]

### III. Lay Testimony

Plaintiff finally argues that the ALJ erred in his consideration of the lay testimony from Dorothy Tunget, Dwight D. Crow, and Leona Sisson. Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114. To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id.

#### A.   Ms. Tunget

Dorothy Tunget, plaintiff's wife, testified at the hearing and submitted an additional Witness Statement. At the hearing, Ms.

---

[3] Plaintiff argues that the ALJ could not reject Dr. Suckow's note because it was conclusory and did not ascribe any ascertainable functional limitations because doing so would trigger the ALJ's duty to develop the record. I disagree, however, because Dr. Suckow's brief opinion is not the sort of ambiguous evidence that triggers the ALJ's duty to develop the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

Tunget testified that plaintiff cannot work because he does not "get along with people very well," has problems with authority, and does not follow instructions well. Tr. 70. Ms. Tunget testified that plaintiff has outbursts of anger approximately four times per week from which it takes him between ten minutes and one hour to calm down. Tr. 70-71. Ms. Tunget reported that plaintiff can work on his car for eight hours per day, but cannot do so working with others and has occasional outbursts of anger. Tr. 74-75. In her Witness Statement, Ms. Tunget indicated that plaintiff has marked restrictions in each of his mental capacities, and stated that plaintiff's concentration, persistence, and pace problems cause him to forget what he is doing in the middle of an activity. Tr. 309-16.

The ALJ rejected Ms. Tunget's testimony because it was internally inconsistent and inconsistent with other of plaintiff's self-reports. As the ALJ noted, Ms. Tunget's testimony that plaintiff can work on his car for eight hours per day is inconsistent with her report that he has such marked concentration, persistence, or pace difficulties that he forgets what he is doing in the middle of an activity. Tr. 74, 309-11. Moreover, as the ALJ also noted, Ms. Tunget's testimony that plaintiff "doesn't go out actually at all except when we go get gas or go to the grocery store," is contradicted by statements plaintiff made to treating sources that he visits his son weekly at his parents' house, was

planning to go to Burns, Oregon in the summer to work with a friend, and took a trip to eastern Oregon over Memorial Day weekend. Tr. 71, 424, 430. The ALJ cited germane reasons to reject Ms. Tunget's testimony.

**B.  Ms. Sisson**

Leona Sisson submitted a Witness Statement reporting that she has known plaintiff for 17 years, and currently sees him twice per month. Ms. Sisson indicated that plaintiff has marked impairments in his overall functionality, as well as activities of daily living, social functioning, and episodes of decompensation. Tr. 298-301. Ms. Sisson additionally stated that plaintiff cannot cook, go shopping, bathe, or shave for himself. Tr. 305.

The ALJ rejected Ms. Sisson's statement because there is little in the record establishing what foundation she has for her knowledge of plaintiff's functioning and her testimony was inconsistent with other record evidence. Indeed, Ms. Sisson admitted in her statement that she only sees plaintiff twice per month. Tr. 298. Additionally, there is nothing establishing what sort of relationship she has with plaintiff. The ALJ reasonably discounted Ms. Sisson's observations for this reason. Moreover, the ALJ was correct that Ms. Sisson's statement that plaintiff cannot cook, shop, shave, or bathe himself is inconsistent with the record, including plaintiff's own allegations. Compare Tr. 305 with Tr. 181 (reporting that plaintiff has no problem feeding

himself or shaving).  The ALJ cited germane reasons to reject Ms. Sisson's testimony.

### C.  Mr. Crow

Dwight D. Crow also submitted a Witness Statement attesting that he has known plaintiff for 17 years and sees him twice per week.  Mr. Crow marked that plaintiff is markedly limited in his overall functionality as well as in social functioning, and moderately limited in activities of daily living. Tr. 306-07.  Mr. Crow reported that he has difficulty with crowds of people.  Id. The ALJ rejected Mr. Crow's statement because it did not establish sufficient foundation for his testimony.  Again, nothing in Mr. Crow's statement described the nature of his relationship or the extent of his contact with plaintiff.  The ALJ could reasonably discredit Mr. Crow's statement on this basis.  Thus, I conclude that the ALJ cited germane reasons to reject Mr. Crow's testimony.

Moreover, I note that Mr. Crow's opinion is largely consistent with the RFC.  Mr. Crow opined about plaintiff's difficulty interacting with people and in large crowds.  Tr. 306-08.  These limitations are accounted for in the RFC, as the ALJ limited plaintiff to occasional, brief contact with the general public and coworkers, no teamwork, and working best in an autonomous environment.  Tr. 27, 306-08.  Thus, even if the ALJ had failed to cite germane reasons for rejecting Mr. Crow's testimony, such error would be harmless.

Finally, because I conclude that the ALJ properly considered plaintiff's testimony, the medical testimony, and the lay testimony, I reject plaintiff's argument that the vocational hypothetical was inadequate on the basis that the ALJ erroneously weighed such evidence.

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this _10_ day of September, 2013.

_Malcolm F. March_
Malcolm F. Marsh
United States District Judge